UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WENDY GAUTHIER,

    *Plaintiff,*

v.

SUNHEALTH SPECIALTY SERVICES, INC. and SUNBRIDGE HEALTHCARE CORPORATION,

    *Defendants.*

Civil Action No.: 4:05-cv-40119

**MEMORANDUM IN SUPPORT of
DEFENDANTS' MOTION for SUMMARY JUDGMENT**

The Plaintiff claims she was terminated or otherwise discriminated against for being "handicapped" or for being pregnant. Her discrimination claims are brought under Chapter 151B of the Massachusetts General Laws. She also alleges retaliation under Chapters 151B and 152 (Workers' Compensation Act). The Plaintiff was not a handicapped individual within the meaning of Chapter 151B. Her pregnancy did not give rise to any complications that would establish her as disabled within the meaning of 151B and she has not alleged any acts of retaliation.

Under the four part test for a claim under Chapter 151B, a plaintiff must prove: (1) that she is handicapped within the meaning of the statute; (2) that she is qualified to perform the essential functions of the job with or without reasonable accommodation; (3) that she was terminated or otherwise subject to an adverse action by his employer; and (4) that she was replaced by an employee with similar or lesser qualifications. *Dartt v. Browning-Ferris Indus.*, 427 Mass. 1, 6, 691 N.E.2d 526, 530 (1998). Because there are disputes related to other defenses

raised by the Defendants in this matter, the Defendants focus this motion on the first two elements of the handicapped discrimination test.

Although the Plaintiff was not rendered handicapped by her pregnancy, or any other cause, she did fail to perform the essential functions of her job. She was unable to lift residents, a central function of the Certified Nursing Assistant. She also had excessive absences, thereby failing in one on the most essential elements of must job, being present for her shift.

The two Counts concerning retaliation are simply unsustainable given that the Plaintiff admits that she never made a claim of discrimination while employed by the Defendants nor did she ever file or seek to have filed a claim under the Workers' Compensation Act. Therefore, there could be no acts of retaliation.

## STATEMENT OF FACTS

**I.     Employment of the Plaintiff**

The Plaintiff, Wendy Gauthier, was employed by the Defendants (collectively referred to as SunBridge) as a Certified Nursing Assistant (CNA) on the 11:00 PM to 7:00 AM shift. *Defendants' Statement of Facts*, Nos. 1-2. She was employed from December 22, 2003 through May 25, 2004. *Id*. During these six months of employment, she was paid at the rate of $^{\$}$12.00 per hour. *Defendants' Statement of Facts*, No. 3. Her employment was terminated following a second failure to report for work without prior notice to her employer. *Defendants' Statement of Facts*, No. 12.

SunBridge was aware that the Plaintiff was pregnant at the time she was hired by Ann Kendall, the same supervisor she now claims discriminated against her because of her pregnancy. *Defendants' Statement of Facts*, No. 4.

**II.    Essential Job Functions of the CNA**

The essential job functions of the CNA at a nursing home include lifting and moving the patients. *Defendants' Statement of Facts*, No. 19. Another essential job function is showing up for assigned shifts. *Defendants' Statement of Facts*, No. 10. Attendance is especially an issue on second and third shifts, where finding substitute help, especially at the last minute is difficult. *Defendants' Statement of Facts*, No. 13. Understaffing resulting from poor attendance by CNAs can jeopardize the health of the nursing home patients and expose the CNA's employer to considerable liability and regulatory action. *Defendants' Statement of Facts*, No. 11.

**III.    The Plaintiff's claims based on her pregnancy**

The Plaintiff does not suffer from any permanent disability. *Defendants' Statement of Facts*, No. 7. The Plaintiff bases her claim of handicap discrimination on her pregnancy. *Id*. The Plaintiff's pregnancy was normal and the conditions she suffered during the pregnancy were typical of normal pregnancies and required no medical intervention. *Defendants' Statement of Facts*, Nos. 8-9.

The only accommodation requested by the Plaintiff for her pregnancy was time off from her assigned shift. *Defendants' Statement of Facts*, No. 16 citing **Exhibit B –** Depo. of Gauthier (Day 1), 38:9-38:16 ("The only accommodation that I had told Ann was that I might need to take some nights off because I had some early morning doctor's appointments and she told me I was unable to do that. Because it was too hard for me to stay up all night and stay up all day to go to my doctor's appointments. And I was denied those accommodations"). Prior to her termination, the Plaintiff had repeated absences. *Defendants' Statement of Facts*, No. 14-15.

Because of her inability to be present for her work shifts, the Plaintiff could not perform as essential function of her job and was not a qualified handicapped individual.

3

**IV.     The Plaintiff's claim based on her injury**

The Plaintiff raises additional theories alleging that accommodations were not provided to her following a kick she received from a patient. **Exhibit J**. The Plaintiff is unsure of the date of this incident, but claims that, as a result of this kick from a patient, she could not lift or bend. *Defendants' Statement of Facts*, No. 18.

Because the Plaintiff could not lift or support the weight of the nursing home's patients, she could not perform an essential job function of a CNA. *Defendants' Statement of Facts*, No. 19.

**V.     The Plaintiff's retaliation claims**

The last two counts of the *Amended Complaint* raise claims of retaliation under Chapters 151B (discrimination) and 152 (Workers' Compensation Act).

The Plaintiff admits that she never made a claim of discrimination while employed by the Defendants. *Defendants' Statement of Facts*, No. 20. She also admits that she was never retaliated against for making a report of discrimination. *Defendants' Statement of Facts*, No. 21.

The Plaintiff also admits that she never raised the issue of a Workers' Compensation Act claim with the Defendants.

**ARGUMENT**

**I.     Is the Plaintiff a qualified handicapped individual within the meaning of Chapter 151B of the Massachusetts General Laws (Count I and II)**

Massachusetts law does not consider pregnancy as a handicap. See *Minicucci v. Charles Hotel*, 9 Mass.Discrim.L.Rep. 1217, 1218-1219 (1987) (Single Comm'r) (Under the MCAD Handicap Discrimination Guidelines, only pregnancies with disabling side-effects would qualify. MCAD Handicap Discrimination Guidelines at § II(A)(2), excluding "normal" pregnancy).

4

Since the Plaintiff was not handicap, she cannot recover for discrimination on the grounds that she was a qualified handicapped person. Even if the Plaintiff could claim that some complication resulting from her pregnancy made her handicapped within the meaning of Chapter 151B, a handicapped employee can be terminated if their impairment renders them incapable of performing the essential functions of their job, with or without reasonable accommodations.

> The burden is on the employee to show . . . "whether the individual can perform the essential functions of her position" without reasonable accommodation; and if not, whether "any reasonable accommodation by her employer would allow her to do so."

*Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006), quoting *Phelps v. Optima Health, Inc.,* 251 F.3d 21, 25 (1st Cir. 2001). The Plaintiff must prove the same in order to sustain any claim through Chapter 152, which provides an alternative definition of handicapped for purposes of Chapter 151B actions.

> both Chapter 151B, §4 and Chapter 152, §75B(1) require that a plaintiff be "capable of performing the essential functions of a particular job, or [ ] be capable of performing the essential functions of a particular job with reasonable accommodation."

*Mulloy*, 460 F.3d, at 155.

A claim of gender discrimination based on pregnancy bears a similar requirement that the Plaintiff show that she was that she was capable of performing the job at an acceptable level. *See White v. University of Massachusetts at Boston,* 410 Mass. 553, 558 (1991).

The Plaintiffs was not capable of performing at least two of the essential job functions of a CNA. First, she was unable to attend her work shifts. Second, she was not able to lift or support the weight of facility residents.

### A. Absenteeism due to pregnancy is not protected

The First Circuit has directly addressed the question of whether an employer may terminate an employee based on absences related to pregnancy.

> [T]he discrimination statutes are not medical leave acts, and [an employer] would not automatically be liable for gender discrimination if it had discharged [a pregnant employee] for poor attendance under standards applied to other employees, even if the poor record was due to pregnancy complications.

*Troy v. Bay State Computer Group, Inc.*, 141 F.3d 378, 381 (1st Cir. 1998) (applying Massachusetts and Federal law). The Plaintiff was not able to attend her scheduled shifts. *Defendants' Statement of Facts*, Nos. 14-15. In fact, the only accommodation requested by the Plaintiff was time off from work. *Defendants' Statement of Facts*, No. 16.

Not only does Chapter 151B not act as a medical leave act – barring termination of pregnancy related absences, the Massachusetts Medical Leave Act does not preclude such terminations. Mass.Gen.L. c 149, §105D. The Massachusetts Maternity Leave Act requires that an employer grant an employee up to eight (8) weeks unpaid leave for the birth or adoption of a child, after which job restoration, or substantially similar job offer, must occur.

The accommodation for her pregnancy the Plaintiff was seeking was additional time off from work. *Defendants Statement of Facts*, No. 16. The Defendants were not required to permit excessive absences as an accommodation for a normal pregnancy. *Defendants Statement of Facts*, No. 8-9. Had the Defendants provided the requested accommodation, it could have resulted in staffing shortages and thereby jeopardized the facility's patients.

### B. It was not an act of discrimination to refuse to provide the Plaintiff with "light duty" in the form of no lifting or bending.

"An employer is not required by the ADA to create a new job for an employee." *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 27 (1st Cir. 2001). CNAs assist nursing home residents to

ambulate, and to go to the bathroom. They reposition residents in bed to avoid pressure sores. When a resident falls, it is the CNA who picks them up. These duties and many others require the ability to lift substantial weight. The Plaintiff claims she could not perform these functions. *Defendants' Statement of Facts*, No. 19.

To the extent that the Plaintiff alleges that the Defendants discriminated against her by failing to accommodate her by removing the need to lift or bend as part of her job description, this would mean rewriting the essential functions of the CNA position. *Phelps,* 251 F.3d at 26 ("Although a reasonable accommodation may include job restructuring, an employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees." (internal citation and quotation marks omitted)). Light duty (in terms of eliminating the need to lift or bend) simply is not available for a CNA on third shift. *Defendants' Statement of Fact*, No. 19, citing **Exhibit E** – Depo. of Ann Kendall, 75:23-76:13 (light duty in the form of no bending or lifting is not possible on the 11:00 to 7:00 shift); **Exhibit F** – Depo of Kathleen Raymond, 17:16-17:19, 35:7-35:15 (former CNA testifying that she can never again perform the duties of a CNA because she cannot lift).

The Defendants simply were not required to rewrite the CNA position to remove all tasks related to lifting and bending, nor could they adequately staff the nursing facility to protect and care for the patients with a CNA who could not lift, particularly on the night shift, when staffing numbers are lower. *Defendants Statement of Facts*, No. 19 (accommodation the Plaintiff was seeks was to be free from lifting and bending).

**II.     The Plaintiff never made a report of discrimination, therefore she cannot sustain a claim of retaliation under Chapter 151B (Count III).**

Count III of the Plaintiff's *Amended Complaint* is titled "M.G.L. c. 151B–Retaliation" and alleges:

> 26. The Plaintiff was treated differently as to the terms and conditions of her employment and based upon her reporting of handicap, sex and gender discrimination.
>
> 27. The Plaintiff believes that she was terminated, at least in part, based upon her reporting of said discrimination.

**Exhibit A**. But during her deposition, the Plaintiff testified, "Q. While you were employed at SunBridge, did you ever complain to anybody that you thought you were being discriminated against? A. No." **Exhibit B –** Depo of Wendy Gauthier (Day 1), 45:17-45:21. The Plaintiff never made a report of discrimination, therefore there could not have been retaliation for making a report of discrimination.

It is clear from her deposition that the Plaintiff fails to comprehend the distinction between a retaliation claim and a discrimination claim:

> Q. Were you ever retaliated against for saying that you were pregnant?
>
> A. Yes.
>
> Q. When?
>
> A. After I was injured on the job.
>
> Q. And by whom?
>
> A. Because I had -- I felt like they retaliated against me because I missed a lot of time from work due to my pregnancy, they wrote me up. They got me for a no call/no show which I never committed. I was sick all the time. I needed light duty, was refused it.

**Exhibit B –** Depo of Wendy Gauthier (Day 1), 45:22-46:9.

> Q. Were there any other instances where anybody retaliated against you at SunBridge because you said you were pregnant?
>
> MR. SHEA: Other than what she's already testified to?
>
> MR. GRIGGS: Correct.

THE WITNESS: No.

**Exhibit B** – Depo of Wendy Gauthier (Day 1), 47:19-48:1. The Plaintiff's claim is that she was discriminated against in the way SunBridge reacted to her excessive absences during her pregnancy, not that she made a report of discrimination and suffered retaliation for making that report.

**III.    The Plaintiff never sought to have a Worker's Compensation Act claim filed on her behalf, , therefore she cannot sustain a claim of retaliation under Chapter 152, §75B (Count IV).**

The Plaintiff's claim based on Chapter 152 of the Massachusetts General Laws is limited to one under Section 75B of that statute and claims retaliation.

Count IV of the Plaintiff's *Amended Complaint* is titled "M.G.L. c. 152–Retaliation" and repeats the alleges (and numbering) of Count III:

> 26. The Plaintiff was treated differently as to the terms and conditions of her employment and based upon her reporting of handicap, sex and gender discrimination.
>
> 27. The Plaintiff believes that she was terminated, at least in part, based upon her reporting of said discrimination.

**Exhibit A**. But during her deposition, the Plaintiff testified

> Q. But, nonetheless, you did return to work; is that correct?
>
> A. That is correct.
>
> Q. And were you able to fulfill your essential job functions when you returned to work after you were injured on the job?
>
> A. Yes, I had to.
>
> Q. Did you ever file a workmen's compensation complaint?
>
>     MR. SHEA: Objection.
>
>     You can answer that.
>
>     THE WITNESS: Did I?
>
> Q. (By Mr. Griggs) Yes.
>
> A. At the time, no.

9

> There was -- there was nothing brought up to me about workmen's compensation.
>
> Q.  Did you ever ask anyone about workmen's compensation?
>
> A.  No.
>
> Q.  Did you ever speak to anyone at SunBridge about workmen's compensation?
>
> A.  No, I did not.
>
> Q.  In your complaint relating to this lawsuit, it was stated that you believe you were discriminated against, or retaliated against -- I'm paraphrasing -- for filing a workmen's compensation claim; is that correct?
>
> A.  Correct.

**Exhibit C –** Depo. of Gauthier (Day 2), 47:21-48:24.

If the Plaintiff never "exercised a right afforded by" the Workers' Compensation Act nor "testified or in any manner cooperated with an inquiry or proceeding pursuant to" the Workers' Compensation Act (*see* §75B(2)), then SunBridge could not have violated Section 75B by retaliating against her for doing so.

## CONCLUSIONS

This Court should grant summary judgment to the Defendants on Counts I, II, III and IV of the Plaintiff's *Amended Complaint*.

Respectfully Submitted,

**SunHealth Specialty Services, Inc., and SunBridge Healthcare Corporation**,

by its attorney,

   /s/ Michael Williams
K. Scott Griggs     (BBO# 555988)
Michael Williams (BBO# 634062)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile:  (617) 439-3987
MWilliams@Lawson-Weitzen.com

**CERTIFICATE OF SERVICE**

I hereby certify that this Document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 2, 2007.

   /s/ Michael Williams