UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WENDY GAUTHIER,

                Plaintiff

v.

SUNHEALTH SPECIALTY
SERVICES, INC. and SUNBRIDGE
HEALTHCARE CORPORATION,

             Defendants

CIVIL ACTION NO.: 05cv40119-FDS

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

Now that the evidence in the case has been presented and you have heard the closing arguments of the attorneys, the time has come for me to instruct you on the law. My instructions will be in two parts:

First, I will give you some important general instructions of law that I give in every civil jury case;

Second, I will instruct you regarding the law that is specific to this case.

**General Instructions**

It is your duty to find the facts based solely on the evidence in this case, and to render a true and just verdict based on the facts and the law. I will now tell you what the law is, and it is

your duty to follow the law as I give it to you, regardless of whether you personally agree with the law or not. In following my instructions concerning the law, you must follow every instruction; you may not follow some and ignore others.  All are important.

While you must follow the law, you must find the facts. In determining the facts, you must rely solely on the evidence admitted in this case. What is that evidence? It falls into two categories:

- First, it is the sworn testimony of the witnesses, whether given during direct or cross examination;
- Second, it is the exhibits that were admitted into evidence during the trial;

Let me also tell you what is not evidence.

- The opening statements and closing arguments of the attorneys are not evidence, nor are any other arguments you heard them make during the course of the trial.

- Questions asked of the witnesses are not evidence. They may be considered only to the extent that they give meaning or context to the answers given to those questions by the witnesses.

- Some items may have been identified for the record but never admitted into evidence and given an exhibit number. These items are not evidence and may not be considered by you

in your finding of the facts.

• Anything you may have seen or heard outside the courtroom is not evidence. If you did not hear it in the courtroom during the trial, it is not evidence and may not be considered.

• Objections to questions are not evidence. Nor is any answer that I ordered to be stricken from the record or told you to disregard.

• If you kept notes, those notes, of course, are not evidence. They may be used simply as an aid to refresh your memory of the evidence that was presented during the course of the trial.

Let me remind you that it is an attorney's job to object to a question when they believe that the question is improper under the rules of evidence. You should not hold it against any attorney or any party that he or she has objected to any question, or take any meaning from that. Nor should you be influenced in any way by my ruling on any objection, or take any meaning from that.

Now let me explain how you should evaluate the evidence. You must determine what weight, what importance, to give to the different evidence before you. The law does not give oral testimony any greater or lesser weight than documentary evidence. You may find that the credible testimony of a particular witness is very important in reaching a factual finding, or you may find that a document admitted into evidence is more important.  The weight of the evidence

need not depend on the sheer volume of evidence, or the number of witnesses or exhibits. You might find that a few witnesses testifying to a particular fact are more believable than a larger number of witnesses testifying to the opposite, or you may not.  It is up to you, using your intelligence, life experience, and common sense, to evaluate the evidence.

Just as I have told you what is not evidence, I shall also tell you how you shall not evaluate the evidence. You shall not be swayed by prejudice, bias, sympathy, or anger. The courtroom is not the place for any of these emotions, nor is the jury room. When you decide this case you must do so on the basis of the facts as you find them. You must disregard sympathy for either party and focus on the facts alone. You must consider the evidence in a calm, dispassionate, analytical manner.

You shall not be influenced by any personal likes or dislikes you have come to feel toward any party or their attorney. Nor shall you be influenced by whether a party is rich or poor, well educated or not, well dressed or poorly dressed, young or elderly. In this courtroom, every person is equal, and is entitled to a fair and impartial verdict in accordance with the evidence and the law.  Nor shall you consider anything I have done — in ruling on motions or objections, speaking with the attorneys, making any gestures or facial expressions, or instructing you on the law — as reflecting any opinion as to how you should decide this case.  If you believe I have an opinion about the facts of this case, you must disregard it.  You must decide this case based on your evaluation of the evidence, and not speculate regarding my view of the facts.  Indeed, more broadly, guesswork, conjecture, and assumptions must play no role in your decision; your decision must rest squarely on the evidence.

4

**Direct and Circumstantial Evidence**

There are two types of evidence which you may use to determine the facts of a case: direct evidence and circumstantial evidence. Direct evidence is given when a witness testifies directly about the fact that is to be proved, based on what he claims to have seen or heard or felt with her own eyes, ears, or hands. Circumstantial evidence is given when a witness offers evidence of other facts that invite a reasonable inference about the fact that is to be proved. Drawing an inference is something you do every day; you make little steps in reasoning, in which you take some known information, apply your intelligence, life experience, and common sense, and then draw a conclusion. You may draw an inference even if it is not necessary or inescapable from the circumstantial evidence, so long as it is reasonably drawn from that evidence.

The law allows both direct and circumstantial evidence, and does not prefer one over the other — both types of evidence, if credible, can form the basis for your verdict.  With regard to circumstantial evidence, however, you must keep in mind that the inferences you draw must be reasonable and warranted by the evidence.

**Credibility**

As the judges of the facts, you are the sole judges of the credibility of witnesses. If there are differences in the testimony of different witnesses, you must resolve those differences, and

5

find where the truth lies. You may believe everything a witness says, or part of it, or none of it. In evaluating the credibility of a witness and deciding how much importance to give it, you may consider the following issues:

• Is the witness trying to tell the truth or is he lying, bending the truth, or exaggerating the truth? Often it may not be what a witness says, but how he or she says it that might give you a clue whether to accept her or her version of events as believable. You may consider a witness's character, appearance, and demeanor on the witness stand, frankness or lack of frankness in testifying, whether the testimony is reasonable or unreasonable, probable or improbable. You may also consider any motive the witness may have to testify in a certain way, whether the witness displays any bias, or whether the witness has any interest or stake in the outcome of the case. Simply because a witness has an interest in the outcome of the case does not mean that the witness is trying to tell the truth as he or she recalls it, but a witness's interest in the case is a factor that you may consider in determining whether the witness is indeed telling the truth.

• Is the witness sincerely trying to tell the truth but mistaken in her or her observation or memory? You may take into account how good an opportunity the witness had to observe the fact about which the witness has testified, the likelihood that the witness accurately understood what he or she saw, the quality of the witness's memory, and the extent to which the event in question would likely be remembered and remembered accurately.

- Did the witness prior to the trial make any statement or act in a way that was inconsistent with the testimony the witness gave on the witness stand? If so, you may consider whether the inconsistency was significant or not in the context of ther case, and whether it reflects an intentional falsehood, an innocent difference of memory, or a correction of a past misstatement. You are not required to believe or disbelieve a witness because her or her testimony has or has not been impeached or contradicted. It is for you and you alone to decide the believability of each witness and to give the testimony of each witness such weight, if any, that you believe the testimony deserves.

You have heard testimony in this case that certain evidence was admitted for a limited purpose. You may not consider this evidence for any other purpose.

## Exhibits

You will have all the exhibits that are in evidence with you in the jury room. You shall consider exhibit evidence in the same way as witness testimony; you must determine whether you believe what is contained or reflected in the exhibit and, if so, what weight it deserves.

## Burden of Proof and Preponderance of Evidence

The Plaintiff bears the burden of proving all the elements of her claim against the Defendants by a preponderance of the evidence. You have probably heard about the standard of proof "beyond a reasonable doubt." That standard applies only in criminal cases, not in civil

cases like this one. The standard here is a fair preponderance of the evidence.  To establish a fair preponderance of the evidence means simply to prove that something is more likely so than not so, more likely true than not true. Since the burden of proof rests with the Plaintiff as to all elements, the Plaintiff must persuade you that it is more probable than not that each essential element of her claim is true. If you find that it is more likely or equally likely that an essential element of her claim is not true, she has failed to sustain her burden of proof.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them [as well as any stipulations agreed to by counsel]. A preponderance of the evidence is not necessarily determined by the number of witnesses who have testified for the Plaintiff or for the Defendants. It is a question of the weight of the evidence -- its quality, not necessarily its quantity. It is for you alone to decide what, if any, weight to give to the testimony of each witness and to each exhibit in reaching your verdict in this case. Of course, a preponderance of the evidence must be based on the evidence; it cannot be founded on conjecture, guesswork or assumptions.

That concludes my instructions to you on general matters of law. Let me now turn to those aspects of the law that are specific to this case.

**Case-Specific Instructions**

I.    SEX/GENDER AND PREGNANCY DISCRIMINATION

General Laws Chapter 151B, the Commonwealth's law against discrimination, makes it an unlawful practice for an employer, by itself or by its agent, to discriminate against an employee on the basis of the employee's sex or gender, in compensation or in the terms, conditions, or privileges of employment.

In this case, the Plaintiff, Wendy Gauthier, a former employee of the Defendants, Sunhealth Specialty Services, Inc. and Sunbridge Healthcare Corporation, claims that the Defendants discriminated against her, not for any legitimate business reason but because of the Plaintiff's gender. Specifically, the Plaintiff claims that the Defendants terminated the Plaintiff's employment on or about May 25, 2004, while she was pregnant, allegedly for failing to appear for a scheduled shift (an alleged no call/no show) in violation of the Defendants' attendance policy. However, the Plaintiff alleges that at all times she complied with the attendance policy and never committed a no call/no show.

In addition, the Plaintiff alleges that her supervisor, Ann Kendall, made several comments to the Plaintiff about the Plaintiff's pregnancy and her ability to perform the essential functions of her position after the Plaintiff disclosed her pregnancy and that she was injured on the job. The Plaintiff also alleges that Ms. Kendall failed to reasonably accommodate the Plaintiff in regard to her pregnancy and related medical conditions. The Plaintiff claims that the Defendants' articulated reason for termination is a pretext, and that the real reason for her

9

termination was discrimination based on her pregnancy, handicap, and in retaliation for requesting accommodations for her pregnancy-related medical condition.


II.   DISCRIMINATION BASED UPON REAL OR PERCEIVED HANDICAP

Massachusetts law prohibits employers from discriminating against a qualified handicapped employee because of the employee's handicap.  The purpose of the law is to remove artificial, arbitrary and unnecessary barriers to full participation in the workplace' for handicapped workers.

Massachusetts General Laws, ch. 151B, Section 4(16); Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College,  413 Mass. 66, 68 (1992) (reciting purpose of Mass. Gen. Laws ch. 151B).


The Plaintiff meets the definition of "a handicapped individual" if you find that:

1)   she has a physical impairment which substantially limits one or more of her major life activities; or

2)   The Defendants regarded the Plaintiff as having a physical impairment which substantially limited at least one major life activity.


In either case, the Plaintiff would qualify as a handicapped individual under Massachusetts law.  See Massachusetts General Laws, ch. 151B, Section 1(10).  A Plaintiff is considered disabled under both the ADA and M.G.L. c. 151B if she "(A) [has] a physical or mental impairment that substantially limits one or more of [her] major life activities…; (B) [has] a record of such impairment; or (c) [is] regarded as having such an impairment." 42 U.S.C. §

12102(2).  Accord M.G.L. c. 151B § 1(17).

Substantially Limiting Impairment

An impairment is substantially limiting if it prohibits or significantly restricts an individual's ability to perform a major life activity as compared to the ability of the average person in the general population to perform the same activity.  MCAD Guidelines § II.A.6.  The "determination of whether an impairment substantially limits a major life activity depends on the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment." MCAD Guidelines § II.A.6.

Major Life Activities

The phrase "major life activities" means functions, including, but not limited to, caring for one's self, performing manual tasks, walking, and working.  Massachusetts General Laws, ch. 151B, Section 1(20).  Other examples of major life activities include sitting, standing, and lifting.  See MCAD Handicap Guidelines, II (A)(5).

Essential Functions

In considering the Plaintiff's claims, you must first determine which functions of the service position were "essential functions" as I will define that term.

"Essential functions" are those functions which must necessarily be performed by an employee in order to accomplish the principal objectives of the job. Put another way, the "essential functions" are those that are not incidental or tangential to the job in question. When determining the essential functions of the position, you must consider the duties and responsibilities of the Plaintiff's particular job. Functions that are identified as part of a job but which are in fact occasionally or never performed are not likely to be essential. MCAD Handicap Guidelines, II(B). See also, <u>Cargill v. Harvard University,</u> 60 Mass. App. Ct. 585, 597 (2004) (quoting <u>Cox v. New England Tel. & Tel. Co.,</u> 414 Mass. 315, 384 (1993)).

<u>Consideration of The Plaintiff's Actual Abilities</u>

Once you have determined which functions were essential to the Plaintiff's position, you must decide whether the Plaintiff could accomplish those functions at the time that the Defendants terminated the Plaintiff. If you find that the Plaintiff was able to accomplish those essential functions, with or without any accommodation, then you must find in favor of the Plaintiff on her claim that the Defendants discriminated against her because of her handicap when it terminated her after requesting time off for accommodations.

When you are considering the Plaintiff's ability to accomplish the essential functions of her position, you should consider only the Plaintiff's actual abilities and limitations. You may not consider any stereotypes and generalizations which you may have about pregnancy in general and/or pregnancy-related medical conditions. Even if you know someone who has pregnancy-related medical conditions, you should not base your conclusions on the experiences

and abilities of other individuals.  You must consider only the Plaintiff's abilities.  Your analysis

will necessarily require you to distinguish between unfounded stereotypes, on the one hand, and

a frank assessment of the Plaintiff's abilities, on the other hand.  <u>Gillen v. Fallon Ambulance</u>

<u>Serv.,</u>  283 F. 3d 11, 29 (1st Cir. 2002).


<u>Reasonable Accommodations In General</u>


    If you find the Plaintiff was unable to accomplish one or more of the essential functions

of her job without some accommodation, you must consider whether the Plaintiff would have

been capable of accomplishing those functions with reasonable accommodation for her

pregnancy-related medical condition.


    A "reasonable accommodation" is any adjustment or modification to a job (or the way a

job is done), employment practice, or work environment that makes it possible for a handicapped

individual to perform the essential functions of the position involved and to enjoy equal terms,

conditions and benefits of employment.  MCAD Handicap Guidelines, II(C).


    "[S]imple modifications, such as sharing chores with coworkers, using a cart to move

some objects, and lightening the load to carrying other objects from one place to another" are

reasonable accommodations.  "A reasonable accommodation may include modifying when and

how an essential job function is performed." <u>5th. Comm. Norton v. Mass. Comm'n Against</u>

<u>Discrimination</u>, 63 Mass. App. Ct. 839, 846-847 (2005). Quoting MCAD Handicap Guidelines.

II(C).

Other types of accommodation that may be considered reasonable include, but are not limited to, the following:

- making job facilities accessible to and equally usable by a handicapped person;

- modifying work schedules;

- obtaining or modifying adaptive job equipment or devices;

- reassigning nonessential job functions;

- allowing time off for medical reasons; and

- reassignment or transfer to a vacant position.

MCAD Handicap Guidelines, II(C).


Duty to Consider and Provide Reasonable Accommodation


The law required the Defendants to consider and provide any reasonable accommodation to the Plaintiff's handicap if the Defendants had reason to know that the Plaintiff would need a reasonable accommodation to perform the functions of her position.


Therefore, if you find that the Plaintiff would have been able to perform the essential functions of her job with reasonable accommodation then you must find in favor of the Plaintiff on her claim that the Defendants discriminated against her because of her handicap when it terminated the Plaintiff.   MCAD Handicap Guidelines, § II(C) and VII (B); see also Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 441 Mass. 632, 644 (Mass. 2004); Carhill v. Harvard University, 60 Mass. App. Ct. at 603; see also, Leach v. Comm'r of the

Mass. Rehab. Comm'n, 63 Mass. App. Ct. 563, 567 (Mass. App. Ct. 2005) (recognizing that when an employee's condition that makes it obvious that accommodation is required, a request for accommodation is unnecessary); Reed v. LeDage Bakeries, Inc., 244 Fad 254, 261, n.7 (1st Cir. 2001) (recognizing that sometimes an employee's need for an accommodation will be obvious).

Termination

Next, you must consider the Plaintiff's claim that the Defendants selected her for termination because of her pregnancy-related medical conditions. The Defendants denies that it considered the Plaintiff's pregnancy and/or her pregnancy-related medical conditions when it selected her for termination.

Qualified Handicapped Person

Again as an initial matter, you must determine whether the Plaintiff would have been able to perform the essential functions of her job, with or without reasonable accommodation for her pregnancy-related medical conditions at the time of her termination. You should use the process and definitions I have just described to determine whether the Plaintiff *was* able to perform the essential functions of the C.N.A position with or without reasonable accommodation. As I explained, you should first consider which functions were essential to the Plaintiff's position. Then you should consider whether the Plaintiff would have been able to accomplish those essential functions with or without reasonable accommodation.

15

Handicap Discrimination In General

If you find that the Plaintiff would have been able to accomplish the essential functions of her position with or without a reasonable accommodation, you must determine why the Defendants terminated the Plaintiff. As I noted before, it is unlawful for an employer to discriminate against a qualified handicapped employee by selecting her for termination because of her handicap.

Stereotyping is Illegal

During your deliberations, you should keep in mind that discrimination is unlawful, whether the motive to discriminate is conscious or unconscious. Sometimes discrimination is the result of an overt hatred towards a set of people. Sometimes, however, the employer feels no particular hostility, but is merely acting on ingrained stereotypes. The employer may subjectively believe that its actions are in the best interests of its business; however, its judgment may be clouded by unfair assumptions and discriminatory stereotypes. When these stereotypes are used, employers' benign intentions may nevertheless coincide with illegal discrimination. Thus, the Plaintiff must prove that the Defendants improperly considered her pregnancy-related medical condition when making its decision, but the Plaintiff need not prove that the Defendants felt some kind of overt hatred or hostility toward pregnant or handicapped workers. See Lipchitz v. Raytheon Co., 434 Mass. 493 (2001) (discrimination is unlawful even though an employer will not necessarily be aware of her or her bias and judge incorrectly instructed jury in gender

discrimination claim that proof of a conscious motive to discriminate was required).

Motivating Factor

Thus, if you find that the Plaintiff could have performed her duties with or without a reasonable accommodation the only question for you to decide is whether the Plaintiff's handicap was a motivating factor in Defendants decision to select the Plaintiff for termination. In other words, you must determine whether the Plaintiff's pregnancy-related medical condition was a material and important ingredient in the Defendants' decision to select the Plaintiff for termination.

To find in favor of the Plaintiff, you do not need to conclude that the Plaintiff's handicap was the only reason for Defendants' decision. If the Defendants considered the Plaintiff's pregnancy-related medical condition as a material and important factor in making its decision, then you must find in the Plaintiff's favor.  Tate v. Dept of Mental Health, 419 Mass. 356, 364 (1995); MCAD Handicap Guidelines, IX (A) (2).

Totality of Evidence and Circumstantial Evidence

When deciding whether the Plaintiff's handicap was a motivating factor, you must consider the totality of the evidence. That means that you should consider all of the evidence regarding things that happened and statements that were made. Keep in mind that direct evidence and statements are not required. You may infer a discriminatory or a non-discriminatory motive

from the existence of circumstantial facts by using your reason and common sense.

Asserted Reasons Untrue

For example, if you find that one or more of the reasons asserted by Defendants for their decision to select the Plaintiff for termination were untrue, meaning that Defendants were not truly motivated to select the Plaintiff for termination because of one of the reasons asserted by the Defendants, then you may, but are not required to, infer that the Defendants are covering up a discriminatory motive, intent or state of mind.  See Lipchitz v. Raytheon, 434 Mass. 493 (2001),

Comparative Employees

Also, if you find that the Defendants treated the Plaintiff differently than similarly-situated individuals without pregnancy-related medical conditions, you may, but are not required to, infer that the Defendants' decision to select the Plaintiff for termination was motivated by discriminatory animus rather than a legitimate motive, intent or state of mind.  Abramiam v. President & Fellows of Harvard College, 432 Mass. 107 (2000).

Temporal Proximity

Similarly, if you find that there was a close temporal proximity between the time Defendants were made aware of the Plaintiff's pregnancy and her requests for accommodations related to her medical conditions and the decision to select the Plaintiff for termination, you may,

18

but are not required, to infer that discriminatory animus was a material and important ingredient in the decision to select The Plaintiff for termination. See e.g. Ritchie v. Department of State Police, 60 Mass. App. Ct. 655 (2004). See also Clockedile V. New Hampshire Dept of Corr., 245 F.3d l,6-7(lst Cir. 2001).

Liability Handicap Is a Motivating Factor

If you find that the Plaintiff's pregnancy-related medical conditions were not a material and important ingredient in the Defendants' decision to select the Plaintiff for termination, then you should find in favor of the Defendants on this claim.

If you find that the Plaintiff's pregnancy-related medical conditions was a material and an important ingredient in the Defendants' decision to select the Plaintiff for termination, then you must find in favor of the Plaintiff on this claim.

III.  RETALIATION

General Laws Chapter 151B also prohibits an employer from retaliating against a person for exercising a right protected under the law.  An employee has a protected right under the law to request an accommodation for a pregnancy-related handicap, as well for resisting and reporting harassment and discrimination.  Thus, if an employee believes, reasonably and in good faith, that she has been harassed and discriminated against for requesting an accommodation and/or for reporting or resisting discrimination and harassment, and the employer takes some

adverse action against the employee in retaliation, then the employer has violated the law.

As for retaliation, under both federal and state law, the Plaintiff must first prove a prima facie case: that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two.  See Wright v. CompUSA, Inc., 352 F.3d 472, 477-78 (1st Cir. 2003); and McMillan v. Mass. Soc., Prev. of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998)(stating standard under federal or Massachusetts law). The Plaintiff asserts that she engaged in protected conduct in that she requested accommodations for her pregnancy-related medical conditions; specifically, time off to attend medical appointments, that she be given light duty assignments, and that she be permitted to additional breaks to use the bathroom.

As for the second and third prima facie elements, you are allowed to draw inferences based upon timing and other circumstantial and direct evidence that there is a causal connection between the Plaintiff's request for accommodations and her termination of employment.  The Plaintiff asserts, however, that there are enough inferences to deem these elements established. If the request for accommodations is close in time to the adverse action, then you as the finder of fact are allowed to draw an inference that there is a causal connection between the request for accommodation and the termination of employment.  See Wright, 352 F.3d at 478 (observing that the record on this point must be "viewed in the light most favorable to [the plaintiff]").

"Once a prima facie case of retaliation is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision. If the employer

provides a legitimate reason, the ultimate burden falls on the plaintiff to show that the employer's proffered reason is pretext masking retaliation." *Id.*

Defendants allege that Plaintiff was discharged for a no-call, no-show.  If you find that the reason for the termination of employment is not credible and is a mere pretext, then you may find in favor of the Plaintiff based upon her retaliation claim.

IV.  DAMAGES

Corporate Party/Employer Liability

Sunhealth Specialty Services, Inc. and Sunbridge Healthcare Corporation are corporations. A corporation is an artificial person created by law that has the same rights as a natural person to do business, make contracts and own property. All persons, including corporations, stand equal before the law. A corporation acts through the conduct of its employees and is responsible for their conduct while engaged in the course of their employment activities. Since the Defendants acts through their employees and agents, and knows what their employees and agents have learned during the course of their employment, it is bound by the acts and knowledge of its employees and agents.

It is important to note that an employer is liable for the discrimination of employees by managers and persons with supervisory authority, regardless of whether the employer knows of the conduct.  Because Massachusetts courts have determined that the Legislature intended that an

employer be liable for discrimination committed by those on whom it confers authority, the courts have adopted the theory of vicarious liability. Under this theory, an employer is liable for the actions of its managers and supervisors because they are conferred with substantial authority over subordinates and are thus considered agents of the employer.

You should not interpret the following instructions on the issue of damages as any view as to which party is entitled to your verdict in this case. You, the jurors, are the sole judges of whether, and in what amount, damages should be awarded to the Plaintiff. Instructions as to the measure of damages are given only for your guidance, should you reach the questions of damages.

If the Plaintiff has proven to you that the Defendants unlawfully discriminated against her, then you must decide the amount of damages, if any, that will fairly compensate the Plaintiff. The purpose of an award of compensatory damages is to make the Plaintiff whole for all the losses that she has suffered because of the Defendants' unlawful discrimination. The Plaintiff bears the burden of proof on damages. Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages. The award is acceptable as long as it is based on just and reasonable inferences from the evidence. If you find that the Defendants unlawfully discriminated against the Plaintiff, then you may award damages in the following four areas:

1.    Back pay;

2.    Front pay;

3.    Emotional distress; and

4.    Punitive damages.

I will explain each to you.

Back Pay

The Plaintiff is entitled to back pay, which is the amount of the Plaintiff's lost earnings from the date of the adverse employment decision until today. This includes all lost bonuses, employment benefits, and health insurance benefits that would have accumulated but for the Defendants' discriminatory conduct.  However, you should decrease this amount by any earnings and benefits received by the Plaintiff from another employer since the date of the adverse employment action.

(a) Mitigation of damages

The Plaintiff also has a duty to limit her damages. It is the Defendants' burden to prove

23

to you that the Plaintiff failed in her duty to mitigate damages by seeking other employment. The Defendants meet this burden if they have proved to you that:

1.    One or more discoverable opportunities for comparable employment were available in a location as convenient as or more convenient than the place of former employment,

2.    The Plaintiff unreasonably made no attempt to apply for any such job, and

3.    It was reasonable likely that the Plaintiff would have obtained one of those comparable jobs.

If the Defendants have proven these facts, then you should reduce any back pay award to the Plaintiff by the amount that she could have earned in wages and benefits at the comparable job.

Front Pay

The Plaintiff is entitled to front pay, which is the amount of damages resulting from the loss of future earnings and benefits that is attributable to the employer's misconduct. You cannot speculate in awarding front pay; rather, the determination of the amount of the award must be proven with reasonable certainty. You should make reasonable estimates based on the evidence concerning the amount of future earnings, including salary, bonuses, and benefits that the

Plaintiff would have received but for the Defendants' unlawful discrimination.

In determining front pay, you should consider and weigh the following factors:

1.    The amount of earnings, including salary and benefits, that the Plaintiff probably would have received between now and the Plaintiff's projected retirement date;

2.    The Plaintiff's probable date of retirement;

3.    The amount of earnings that the Plaintiff probably would have received from another employer until her retirement. This, of course, would reduce any front pay award to the Plaintiff. The Plaintiff is under a duty to mitigate or lessen her losses by reasonable efforts to secure other employment. It is the Defendants' burden to prove that the Plaintiff could reasonably be expected to earn money in the future to offset any losses attributable to the Plaintiff;

4.    The availability of other employment opportunities; and

5.    The possibility of inflation and wage increases in the future.

(a) <u>Reducing Front Pay to Present Value</u>

If you award damages to the Plaintiff for losses she will suffer in the future, keep in mind

that a Plaintiff cannot be awarded damages that overcompensate the losses that she suffered because of the Defendants' conduct. In order to avoid overpaying the Plaintiff, you must consider that the amount of money you give the Plaintiff today for future losses can be put in the bank, where it can earn interest. So, in making an award for future damages, you must determine the amount of money that, if invested today at a reasonable rate of interest, would in the future provide the Plaintiff with the amount of money that you calculated she will lose in the future as a result of the Defendants' conduct.

Emotional Distress

If you find that the Plaintiff has been discriminated against, you may also award her reasonable damages for her emotional distress. Emotional distress includes mental pain, discomfort, indignity, depression, fear, anxiety, or humiliation suffered as a result of the discrimination. Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages.  The award is acceptable as long as it is based on just and reasonable inferences from the evidence.

Punitive Damages

If you find that the Defendants have intentionally discriminated against the Plaintiff, you may consider whether punitive damages are warranted. Punitive damages are different from compensatory damages. Unlike compensatory damages, which compensate the victim for the

harm she has suffered, the purpose of punitive damages is to punish the Defendants for conduct that is outrageous because of the Defendants' evil motive or reckless indifference to the rights of others. Punitive damages are appropriate where the Defendants' conduct warrants condemnation and deterrence.

In determining the amount of a punitive damage award, if any, you should consider:

1. The character and nature of the Defendants' conduct;

2. The Defendants' wealth, in order to determine what amount of money is needed to punish the Defendants' conduct and to deter any future acts of discrimination;

3. The actual harm suffered by the Plaintiff; and

4. The magnitude of any potential harm to other victims if similar future behavior is not deterred.

If you do award punitive damages, you should fix the amount by using calm discretion and sound reason.

You have been given a verdict slip specifying the questions that you must answer. Each question must be considered separately: To reach a verdict, 6 of the 8 jurors must reach agreement on the answer to a particular question. You should continue your deliberations until

27

you have reached a verdict.

[Review verdict slip with the jury.]

### **Closing Instructions**

Let me now say a few words about your deliberations.

When you retire to the jury room to begin your deliberations, each of you should consider all of the evidence, listen to the views of your fellow jurors, and discuss the case with them in an effort to reach agreement regarding a true and just verdict. Although I leave it to you to decide how you wish to deliberate, I urge you not to take an immediate straw vote to determine where each of you stand; rather, I encourage you first to review and analyze all the evidence before anyone is asked to express their views regarding a verdict.  It is important that you reach a verdict if you can do so in good conscience. You should listen carefully and respectfully to your fellow jurors; the collective memories and insight of the other 7 jurors can assist each of you in finding the facts and coming to a true and just verdict. You should not hesitate to re-examine your own views and change them if you are persuaded that you are wrong. At the same time, each of you must decide this case for yourselves, so you should not surrender your honestly held conclusions simply to arrive at a verdict.

I have permitted you to take notes during the trial. You may refer to these notes for your own purposes during the deliberations, but please do not read or give them to other jurors.

28

You should not commence your deliberations until all 8 are together in the jury room, and should cease deliberating if any one juror is not present in the room. It is important that you not communicate with anyone outside the jury room about the deliberations or about anything concerning this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me, you may send a note through the court officers to me, signed by the juror I appoint as your foreperson, identifying the time of the note. I will then consult with the attorneys regarding the appropriate response and communicate that response to you.  No member of the jury should ever attempt to communicate with the Court except through a signed note. If you do send me a note, do not disclose anything to me about the content of your deliberations. Specifically, do not disclose to me (or to anyone) how the jury stands, numerically or otherwise, until you have reached a verdict.

I appoint _____ as your foreperson. The foreperson will have the same vote and the same opportunity to voice her views as her fellow jurors. However, she will also serve as a moderator for the discussion among you, and will be the one to sign all notes to me from the jury, including the note announcing that the jury has reached a verdict.  Once that verdict is reached, the foreperson will sign the verdict slip and her signature will certify that 6 out of 8 of the jurors have agreed to each of the answers given in that verdict slip.

See counsel for any objections.


Swear court officers.


The jury may now retire to begin its deliberations.


Respectfully submitted,

The Plaintiff
WENDY GAUTHIER
By Her Attorney


/s/ Michael O. Shea                           Date:  August 27, 2008
MICHAEL O. SHEA, ESQ.
BBO No.: 555474
Law Office Of Michael O. Shea, P.C.
451 Main Street
Wilbraham, MA 01095
Telephone: (413)596-8005
Facsimile: (413)596-8095


/s/ Daniel J. O'Connell                       Date:  August 27, 2008
DANIEL J. O'CONNELL, ESQ.
BBO No.: 550633
O'Connell, Plumb & MacKinnon, P.C.
75 Market Place
Springfield, MA  01103
Telephone: (413) 733-9111
Facsimile: (413) 733-9888

## <u>CERTIFICATE OF SERVICE</u>

I, Michael O. Shea, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 27, 2008 and that there are no non-registered participants.

/s/ Michael O. Shea