## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

WENDY GAUTHIER,

      *Plaintiff,*

*v.*

SUNHEALTH SPECIALTY SERVICES, INC. and SUNBRIDGE HEALTHCARE CORPORATION,

      *Defendants.*

Civil Action No.: 4:05-cv-40119

---

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

---

Pursuant to Rule 51 of the Federal Rules of Civil Procedure, the Defendants, SunHealth Specialty Services, Inc. and SunBridge Healthcare Corporation, request that the Court instruct the jury as follows at the conclusion of evidence and arguments

Dated: August 27, 2008

Respectfully Submitted,

**SunHealth Specialty Services, Inc. and SunBridge Healthcare Corporation**,

by its attorney,

    /s/ Michael Williams
K. Scott Griggs    (BBO# 555988)
Michael Williams (BBO# 634062)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile:  (617) 439-3987
MWilliams@Lawson-Weitzen.com

**CERTIFICATE OF SERVICE**

I hereby certify that this Document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 27, 2008.

    /s/ Michael Williams

# I. GENERAL INSTRUCTIONS

## A. Function of the Jury

1.      Your function as the jury is to determine the facts of this case. You are the sole and exclusive judges of the facts. You alone determine what evidence to accept, how important any evidence is that you do accept, and what conclusions to draw from all of the evidence. You must apply the law as I give it to you to the facts as you determine them to be, in order to decide whether the plaintiffs have proven their case.

You should determine the facts based solely on a fair consideration of the evidence. You are to be completely fair and impartial, and you are not to be swayed by prejudice or by sympathy, by personal likes or dislikes, toward either side. You are not to allow yourselves to be influenced because the claims are popular or unpopular with the public.

You are not to decide this case based on what you may have read or heard outside of this courtroom. You are not to engage in any guesswork about any unanswered questions that remain in your mind, or to speculate about what the "real" facts might or might not have been.

You should not consider anything I have said or done during the trial—in ruling on motions or objections, or in comments to the attorneys, or in questions to witnesses, or in setting forth the law in these instructions—as any indication of my opinion as to how you should decide the case.  If you believe that I have expressed or hinted at any opinion about the facts of this case, please disregard it. I have no opinion about the facts or what your verdict ought to be; that is solely and exclusively your duty and responsibility.

In short, you are to confine your deliberations to the evidence and nothing but the evidence.[1]

---

[1] Massachusetts Superior Court Civil Practice Jury Instructions, §1.03.

**B.   Impartiality**

2.        You, as jurors, should decide the issues of facts presented in this case "without bias or prejudice as to any party. The law does not permit jurors to be governed by sympathy, prejudice or public opinion ... [You should] carefully and impartially consider all the evidence in this case, follow the law as stated by the court and reach a just verdict, regardless of the consequences."[1]

---

[1] Devitt & Blackmar, Federal Jury Practice and Instructions, § 11.03 at 293 (3d ed. 1977).

**C.  Credibility of Witnesses**

3.      You should give the testimony of each witness as much weight as in your judgment it is fairly entitled to receive. Jurors are the sole judges of the credibility of the witnesses, and if there is any conflict in their testimony, it is your function to resolve the conflict and to determine the truth.

In determining the credibility of a witness, and determining whether the witness is to be believed as to his or her testimony, you should consider the conduct and demeanor of the witness while testifying, the frankness or lack of frankness while testifying, the reasonableness or unreasonableness of the testimony, the probability or improbability of the testimony, the accuracy of the witness' recollection, and the degree of intelligence shown by the witness.

## II.  MASS.GEN.L. C. 151B – DISCRIMINATION ON THE BASIS OF SEX, PREGNANCY, AND HANDICAP STATUS

### A.  Ms. Gauthier's employment status

4.      Ms. Gauthier was an at-will employee of SunBridge.  That means that she was subject to termination at any time, for any reason, or for no reason at all, subject to limited number of public policy exceptions.[1]  An at-will employee can be terminated for reasons that you may perceive as arbitrary or unwise.[2]

---

[1] *Harrison v. Netcentric Corp.*, 433 Mass. 465, 478 (2001) ("Subject to rare public policy exceptions, employment at-will can be terminated for any reason or for no reason").

[2] *Joyal v. Hasbro, Inc.*, 380 F.3d 14, 19 (1st Cir. 2004) (applying Massachusetts law).

**B.  Elements of Sex Discrimination**

5.      Ms. Gauthier alleges that SunBridge discriminated against her because of her sex.  To make out a case of sex discrimination Ms. Gauthier must prove the following elements:

      (1)      she was within a protected class;

      (2)      she met her employer's legitimate performance expectations;

      (3)      she was actually or constructively discharged; and

      (4)      she was replaced by another employee with similar skills and qualifications.[1]

---

[1] *Memorandum and Order on Defendants' Motion for Summary Judgment*, (Docket Entry No. 33), at pp.8-9, *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Patrick v. Jansson Corp*., 392 F. Supp. 2d 49, 53 (D. Mass. 2005) (applying standard to ch. 151B); *Beal v. Board of Selectman of Hingham,* 419 Mass. 535 (1995).

## C.  Elements of Pregnancy Discrimination

6.      Ms. Gauthier alleges that SunBridge discriminated against her because of her pregnancy. Discrimination based on pregnancy is sex discrimination.[1]    Accordingly, the elements of pregnancy discrimination are the same as the elements of sex discrimination.  To make a prima facie case of pregnancy discrimination Ms. Gauthier must prove the following elements:

(1)      that she was pregnant;

(2)      she was capable of performing the job at an acceptable level

(3)      she was terminated; and

(4)      the position she had occupied remained open and SunBridge sought (or hired) a replacement with similar qualifications to fill it.

---

[1] Mass.Gen.L. c. 151B.  *See White v. University of Massachusetts at Boston,* 410 Mass. 553, 558 (1991); *School Committee of Brockton v. MCAD,* 377 Mass. 392, 398-399 (1979); *Massachusetts Electric Company v. MCAD,* 375 Mass. 160, 167-168 (1978)

**D.  Elements of Handicap Discrimination**

7.    Ms. Gauthier alleges that SunBridge discriminated against her because of her alleged handicap resulting from her pregnancy.  In order to recover, Ms. Gauthier must prove to you by a preponderance of the evidence the following elements:

   (1)    that she is handicapped within the meaning of the statute;

   (2)    that she was nevertheless able to perform the essential functions of her job, either

      (a) without accommodation, or

      (b) with a reasonable accommodation provided by the employer, subject to the qualification that the accommodation not pose an undue hardship upon the employer; and

   (3)    that the handicap was the cause of the allegedly unlawful discriminatory action.[1]

---

[1] *Memorandum and Order on Defendants' Motion for Summary Judgment*, (Docket Entry No. 33), at pp.12-13, *citing Cargill v. Harvard Univ*., 60 Mass. App. Ct. 585, 586 (2004); *New Bedford v. Massachusetts Comm'n Against Discrimination*, 440 Mass. 450, 461-462 (2003); *St. Laurent v. United Parcel Service, Inc.*, 416 F. Supp. 2d 212, 220 (D. Mass. 2006).

### E.  Definition of a Handicap Person

8.      A person with a handicap is someone who:

Has a physical impairment which substantially limits one or more of her major life activities, or

Has a record of having such impairment, or

Is regarded as having such an impairment.[1]

9.      An ordinary pregnancy is not considered an impairment under the law because it is not the result of a physiological disorder but a pregnancy with complications requiring special medical treatment may be considered an impairment.[2]

10.     "Major life activities" means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.[3]

11.     The impairment of major life activities, if any, must have been ongoing at the time that Ms. Gauthier alleges she was fired by SunBridge in order for her to be considered a person with a handicap.[4]

12.     Ms. Gauthier's impairments, if any, should be evaluated in their mitigated state to determine whether they substantially limit one or more of Ms. Gauthier's major life activities. "Mitigated state" means that the person is taking measures to correct for a physical or mental impairment.  The effects of these measures (both positive and negative) must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled."[5]

---

[1]  Mass.Gen.L. c. 151B, §§1(17); 1(20); and 4(16); *New Bedford v. Massachusetts Comm'n Against Discrimination*, 440 Mass. 450, 463 (2003).

[2]  *Darian v. University of Massachusetts, Boston*, 980 F.Supp. 77, 85-86 (D.Mass. 1997); 29 C.F.R. § 1630.2(h), App. (1996).

[3]  Mass.Gen.L. c. 151B, §§1(17) and 1(20); *Cox v. New England Tel. & Tel. Co*., 414 Mass. 375, 381, 607 N.E.2d 1035, 1039 (1993); *Talbert Trading Co. v. MCAD*, 37 Mass.App.Ct. 56, 60–61, 636 N.E.2d 1351, 1355, *cert. denied*, 418 Mass. 1110, 642 N.E.2d 301 (1994).

[4]  *Dartt v. Browning-Ferris Industries, Inc*., 427 Mass. 1, 15-16 (1998).

[5]  *Sutton v. United Airlines*, 527 U.S. 471, 488–89 (1999).

**F.   Definition of Qualified Handicapped Person**

13.     In addition to establishing that she is handicapped, plaintiff must put forth evidence that she was a "qualified handicapped person"—that is, that she was "capable of performing the essential functions of the position involved with reasonable accommodation."[1]

14.     An "essential function" is a "fundamental job duty of the employment position the individual with a disability holds or desires."[2]

15.     In this case, the parties agree that lifting and supporting the weight of facility residents is an essential job function of a CNA.

---

[1] *Memorandum and Order on Defendants' Motion for Summary Judgment*, (Docket Entry No. 33), at p.14, *citing* Mass.Gen.L. c. 151B, §1(16); *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000).

[2] *Memorandum and Order on Defendants' Motion for Summary Judgment*, (Docket Entry No. 33), at p.14, *citing Ward v. Massachusetts Health Research Institute,* 209 F.3d 29, 34 (1st Cir. 2000).

## G. Reasonable Accommodations

16.     The burden of showing that a reasonable accommodation was available is on the plaintiff.[1]

17.     The employer's burden of showing an inability to accommodate is triggered only "after a plaintiff produces sufficient evidence to make at least a facial showing that reasonable accommodation is possible."[2]

18.     Massachusetts law does not require that an employer provide a "reasonable accommodation" in the form of a reassignment to new or different position.[3]  Nor does it require an employer to hire an additional person who could do the job for the employee.[4]

19.     If the employee cannot perform the essential duties of her job under any circumstances, the employer is not required to seek out accommodations.[5]

20.     An employer cannot be held liable for failing to accommodate the limitations flowing from a disability where the employer is not aware of the disability.[6]

---

[1] *Memorandum and Order on Defendants' Motion for Summary Judgment* (Docket Entry No. 33), at p. 14, *citing Garcia-Ayala*, 212 F.3d at 648-49; *St. Laurent,* 416 F. Supp. 2d. at 222.

[2] *Memorandum and Order on Defendants' Motion for Summary Judgment* (Docket Entry No. 33), at p. 14, *citing Cargill*, 60 Mass. App. Ct. at 603; *Cox v. New England Tel. & Tel. Co.,* 414 Mass. 375, 386 n.3 (1993).

[3] *Memorandum and Order on Defendants' Motion for Summary Judgment*, (Docket Entry No. 33), at p.15, *citing Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 454 (2002); *see Lolos v. Solutia, Inc.,* 193 F. Supp. 2d 364, 371-73 (D. Mass. 2002); *St. Laurent,* 416 F. Supp. 2d at 223.

[4] *Memorandum and Order on Defendants' Motion for Summary Judgment*, (Docket Entry No. 33), at pp.15-16, *citing Marzano v. Universal Studio, Inc.*, 2003 WL 21696213 (D. Mass. 2003).

[5] *Memorandum and Order on Defendants' Motion for Summary Judgment* (Docket Entry No. 33), at p. 16, *citing Kvorjak v. Maine*, 259 F.3d 48, 53 (1st Cir. 2001); *Soto-Ocasio v. Federal Express Corp.*, 150 F.3d 14, 19 (1st Cir. 1998).

[6] *Memorandum and Order on Defendants' Motion for Summary Judgment* (Docket Entry No. 33), at p. 19, *citing Estades-Negroni v. Associates Corp. of North America*, 377 F.3d 58, 64 (1st Cir. 2004); *Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 649 n.21 (2004).

**H.  Ms. Gauthier's Burden of Proof**

21.     Ms. Gauthier claims that SunBridge discriminated against her, not for any legitimate business reason but because of her sex and/or handicap status.[1]  Specifically, Ms. Gauthier claims that SunBridge terminated her employment because of her pregnancy.  In order to prove a claim for discrimination, Ms. Gauthier must prove to you each and every element of her claim by a preponderance of the credible evidence that SunBridge intentionally discriminated against her. That, Ms. Gauthier's pregnancy must be proven to have been a motivating factor in Defendants' adverse employment actions against her.[2]  The burden of persuasion lies with Ms. Gauthier at all times.

22.     As a general matter, the law requires that pregnant women be treated equally with nonpregnant employees.[3]  Thus, for example, an employer cannot discharge a female employee because she becomes pregnant, and pregnancy-related requests for sick days and other temporary leaves of absence must be treated the same as those made by non-pregnant employees.[4] Nonetheless, the law does not require that employers tolerate poor performance or absenteeism in an employee simply because she is pregnant.   "[T]he discrimination statutes are not medical leave acts, and [an employer] would not automatically be liable for gender discrimination if it had discharged [a pregnant employee] for poor attendance under standards applied to other employees, even if the poor record was due to pregnancy complications."[5]

23.     SunBridge claims that it acted based on legitimate, nondiscriminatory reasons.  If you find that the nondiscriminatory reason given by SunBridge for its actions is the real reason for its

---

[1] Mass.Gen.L. c. 151B, §4

[2] *Weber v. Cmty. Teamwork, Inc.*, 434 Mass. 761, 775 (2001); *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 504 (2001); *Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 115–19, 731 N.E.2d 1075, 1083–86 (2000) (clarifying plaintiff's burden of proof in circumstantial evidence case); *Dartt v. Browning-Ferris Indus.*, 427 Mass. 1, 12, 691 N.E.2d 526, 533 (1998); *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 445, 646 N.E.2d 111, 117 (1995) (the plaintiff bears the burden of persuasion on the ultimate issue of discrimination); *Brunner v. Stone & Webster Eng'g Corp.* 413 Mass. 698, 699, 603 N.E.2d 206, 208 (1992); *Smith Coll. v. MCAD*, 376 Mass. 221, 227, 380 N.E.2d 121, 125 (1978); *Wheelock Coll. v. MCAD*, 371 Mass. 130, 139, 355 N.E.2d 309, 315 (1976); *Sch. Comm. of Boston v. Labor Relations Comm'n*, 40 Mass.App.Ct. 327, 330 n.6, 664 N.E.2d 455, 458 n.6, *further app. rev. denied*, 422 Mass. 1111, 665 N.E.2d 1004 (1996) (applying "but for" test).

[3] *Memorandum and Order on Defendants' Motion for Summary Judgment* (Docket Entry No. 33), at p. 8, *citing Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination,* 375 Mass. 160, 167-168 (1978).

[4] *Memorandum and Order on Defendants' Motion for Summary Judgment* (Docket Entry No. 33), at p.8, *citing Troy v. Bay State Computer Group, Inc.*, 141 F.3d 378, 381 (1st Cir. 1998).

[5] *Memorandum and Order on Defendants' Motion for Summary Judgment* (Docket Entry No. 33), at p.8, *citing Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 816 & n.5 (1997); *Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 440-441 (1995).

actions, it does not matter if employer's action was arbitrary or unwise.[6]  It is not your task to assess the merits or even the rationality of SunBridge nondiscriminatory business decisions.[7]  An employer is entitled to make business judgments and decisions on whatever basis it desires, so long as that reason is not discriminatory under the law.

---

[6] *Joyal v. Hasbro*, *Inc*., 380 F.3d 14, 19 (1st Cir. 2004) (applying Massachusetts law).

[7] *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir. 1991); *Sullivan v. Liberty Mutual Insur. Co*., 444 Mass. 34 (2005).

**F    Motive, Intent, or State of Mind**

24.    In this case, the critical issue is why SunBridge terminated Ms. Gauthier.  It is unlawful to discharge a person <u>because of</u> her sex or handicap.  It is not unlawful to discharge a person for a legitimate, nondiscriminatory reason.  To decide this case, you will have to inquire into and determine the motive, intent, or state of mind of SunBridge.

25.    Ms. Gauthier discrimination claims are based on the employment decision of Stephen Copper and Ann Kendall.  Ms. Kendall is also the same person who hired Ms. Gauthier for her CNA position at SunBridge.  This is relevant because where the same actor is responsible for both the hiring and the firing of a plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action.[1]

26.    Courts have adopted this presumption because, from the standpoint of the alleged discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.[2]

---

[1] *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270-71 (9th Cir. 1996).

[2] *Id*. at 270.

### III.  UNLAWFUL RETALIATION MASS.GEN.L. 151B §4(4)

27.    Massachusetts law makes it unlawful "[for] any person [or] employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under [Chapter 151B]."  To state a *prima facie* case for retaliation, the plaintiff must establish that:

(1)    she engaged in conduct protected under Chapter 151B;

(2)    she suffered an adverse employment action; and

(3)    there is a causal connection between the protected activity and the adverse employment action.[1]

28.    To succeed on this claim, Ms. Gauthier must prove that she reasonably and in good faith believed that her employer engaged in wrongful discrimination, that she acted reasonably in response to this belief, and that SunBridge's desire to retaliate against her was a determinative factor in the decision to take an adverse employment action.[2]

---

[1] *Memorandum and Order on Defendants' Motion for Summary Judgment* (Docket Entry No. 33), at p.21, *citing McMillan* v. *Massachusetts Soc. for the Prev. of Cruelty to Animals*, 140 F.3d 288, 309 (1st Cir. 1998); *Mole v. University of Massachusetts*, 442 Mass. 582, 591-92 (2004).

[2] *Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 121 (2000).

## IV. DAMAGES

29.     If Ms. Gauthier has proven each of the elements I have just explained, you must then determine if she has proven that has suffered damages as a result.

30.     The object of a damage award is to try to restore Ms. Gauthier to the position she would have been in had the wrong not occurred.  Damages are to be awarded to Ms. Gauthier as a fair and reasonable compensation for the legal wrong done to it, if any, by SunBridge.

31.     There is no special formula under the law to assess Ms. Gauthier's damages.  It is your obligation to assess what is fair, adequate, and just.  You must use your wisdom and judgment and your sense of basic justice to translate into dollars the amount, which will fairly and reasonably compensate Ms. Gauthier for her damages.  You must be guided by your common sense and your conscience.

32.     Ms. Gauthier also has a duty to limit her damages.  It is SunBridge's burden to prove to you that Ms. Gauthier failed in her duty to mitigate damages by seeking other employment. SunBridge meet this burden if it has proved to you that:

> One or more discoverable opportunities for comparable employment were available in a location as convenient as or more convenient than the place of former employment,

> Ms. Gauthier unreasonably made no attempt to apply for any such job, and

> It was reasonably likely that Ms. Gauthier would have obtained one of those comparable jobs.

If SunBridge has proven these facts, then you should reduce any back pay award to Ms. Gauthier by the amount that she could have earned in wages and benefits at the comparable job.[1]

---

[1] *Conway v. Electro Switch Corp.*, 402 Mass. 385, 389, 523 N.E.2d 255 (1988); *Buckley Nursing Home v. MCAD*, 20 Mass.App.Ct. 172, 185, 478 N.E.2d 1292, 1301 (1985); *Black v. Sch. Comm. of Malden*, 369 Mass. 657, 662, 341 N.E.2d 896, 901 (1976).

33.     A finding of discrimination or retaliation, by itself, is not sufficient to permit an inference of, or a presumption of emotional distress.[1]   Emotional distress damages should not be improperly considered, or awarded, as a substitute for punitive damages.  Emotional distress damage awards, when made, should be fair and reasonable, and proportionate to the distress suffered.[2]

Some factors that should be considered include (1) the nature and character of the alleged harm; (2) the severity of the harm; (3) the length of time the complainant has suffered and reasonably expects to suffer; and (4) whether the complainant has attempted to mitigate the harm (e.g., by counseling or by taking medication).[3]   In addition, complainants must show a sufficient causal connection between the respondent's unlawful act and the complainant's emotional distress.[4] Emotional distress existing from circumstances other than the actions of the respondent, or from a condition existing prior to the unlawful act, is not compensable.

---

[1]   *Stonehill College v. Massachusetts Commn. Against Discrimination*, 441 Mass. 549, 576 (2004).

[2]   *Id.*

[3]   *Restatement (Second) of Torts* § 905 comment i and § 912 (1979).

[4]   *Id.* at § 917.

34.    The mere fact that I have given you instructions on the measure of damages is not to be construed by you as any indication that the Ms. Gauthier is entitled to recover damages in this case.[1]

35.    You will only reach the issue of damages if you find that Ms. Gauthier has satisfied her burden of proving a claim against SunBridge by a preponderance of the evidence.  If your finding is that the defendant is not legally liable to Ms. Gauthier, then you need not consider the issue of damages.

---

[1] *Meyers v. Muno*, 236 Or. 68, 386 P.2d 808 (1963).